IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| Edgardo Vasquez Castaneda, ) | |
| ) | |
| *Petitioner*, ) | |
| ) | |
| v. ) | Case No. 1:21-cv-1407 (PTG/IDD) |
| ) | Hon. Patricia Tolliver Giles |
| Paul Perry, *et al.*, ) | |
| ) | |
| *Respondents*. ) | |
| ) | |

## MEMORANDUM OPINION & ORDER

This matter is before the Court on the parties' cross-motions for summary judgment in this habeas corpus action. Petitioner, Edgardo Vasquez Castaneda, who is a citizen of El Salvador and does not have legal status in the United States, seeks an order directing the Department of Homeland Security ("DHS") to either (1) immediately release him, or (2) grant him a bond hearing to determine whether he should be released on bond. For the reasons stated in this Memorandum Opinion and Order, Federal Respondents' Motion for Summary Judgment (Dkt. 8) is **GRANTED** and Petitioner's Motion for Summary Judgment (Dkt. 12) is **DENIED**.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

The essential material facts are not in dispute.[1] *See* Petitioner's Memo. in Support (Dkt. 13) at 3. Petitioner is a noncitizen from El Salvador who has lived in the United States for over

---

[1] Petitioner disputes two allegations contained in Federal Respondents' Statement of Undisputed Facts. Dkt. 13 at 3. While Petitioner acknowledges that he was affiliated with MS-13 as a youth, Petitioner disputes the allegation that he is an active gang member. *Id.* Petitioner also contends that Federal Respondents' allegation that Petitioner has a "violent criminal history" is misleading. *Id.* However, the Court is not relying on either of these allegations to decide this issue. Accordingly, it is not necessary to resolve these disputes.

twelve years. Dkt. 13 at 1. He has been in the custody of the United States Immigration and Customs Enforcement ("ICE") for more than three years and is currently detained at ICE's Caroline Detention Facility. *See Statement of Undisputed Material Facts*, Dkt. 9 ¶¶ 1, 7.

In early March 2006, Petitioner was apprehended by the United States Customs and Border Patrol for allegedly entering the United States without inspection. *Id.* ¶ 2. Petitioner was served with a notice to appear in immigration court in Rio Grande City, Texas and released on his own recognizance. *Id.* On May 16, 2006, after failing to appear at a subsequent hearing, Petitioner was ordered to be removed from the United States *in absentia*. *Id.* ¶ 3. Around June 23, 2008, the Gregg County Sheriff's Office apprehended Petitioner and an immigration judge ordered Petitioner to be removed. *Id.* ¶ 4. On August 13, 2008, Petitioner was removed to El Salvador. *Id.* At some point thereafter, Petitioner re-entered the United States without inspection. *Id.* ¶ 5.

On May 2, 2016, the International Criminal Police Organization ("INTERPOL") published a request to law enforcement worldwide—referred to as a "red notice"—to locate and provisionally arrest Petitioner for extradition to El Salvador on the basis that an arrest warrant was issued by the El Salvadorian government, charging Petitioner with aggravated murder and criminal conspiracy. *Id.* ¶ 6. On May 22, 2019, ICE reinstated Petitioner's previous removal order and apprehended Petitioner in Landover Hills, Maryland. *Id.* ¶ 7. Around this time, ICE personnel began conducting post-order custody reviews of Petitioner. *Id.* ¶ 20. As a part of those reviews, ICE personnel determined that the likelihood of Petitioner's removal was reasonably foreseeable, particularly given ICE's frequent removals to El Salvador and the regularity with which El Salvador issues travel documents for its citizens' removal from the United States. *Id.* ¶ 21.

On June 11, 2019, Petitioner claimed a fear of returning to El Salvador and his case was referred to United States Citizenship and Immigration Services for a reasonable fear interview. *Id.*

¶ 8. Two weeks later, an asylum officer found that Petitioner expressed a reasonable fear. *Id.* ¶ 9. Based on that finding, Petitioner was placed in withholding-only proceedings.[2] Dkt. 9 ¶ 9.

On January 8, 2020, an immigration judge set a hearing on the merits of Petitioner's withholding relief application. *Id.* ¶ 10. On April 7, 2020, the immigration judge denied Petitioner's application for withholding of removal under Immigration and Nationality Act ("INA") and Convention Against Torture ("CAT") provisions, but granted Petitioner's application for deferral of removal under the CAT. *Id.* ¶ 11. The DHS appealed. *Id.* ¶ 12. On January 19, 2021, the Board of Immigration Appeals ("BIA") sustained the appeal and concluded that the immigration judge erred in determining that Petitioner was credible. *Id.* As a result, the BIA remanded the proceedings back to the immigration judge. *Id.* ¶ 13.

On April 15, 2021, the immigration judge issued a written decision granting Petitioner's application for deferral of removal under the CAT. *Id.* ¶ 14. The DHS again appealed that decision. *Id.* ¶ 15. On December 21, 2021, the BIA again remanded the case to the immigration judge, instructing the judge to assess the risk of torture to Petitioner by MS-13. *Id.* ¶ 16. The BIA reasoned that the immigration judge's decision was factually inconsistent: the immigration judge simultaneously held that it was unlikely Petitioner would voluntarily obtain a prominent gang-

---

[2] When a noncitizen subject to a final order of removal re-enters the United States after a prior removal, they become ineligible for all discretionary relief from removal except withholding-only relief. *See, e.g., Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35 n. 4 (2006). Thus, "[a]lthough reinstated orders of removal cannot be reviewed, persons subject to such orders can apply for 'withholding' of removal under 8 U.S.C. § 1231(b)(3) based on a reasonable fear of persecution or can invoke the protections of the Convention Against Torture ('CAT')." *Euceda v. Evans*, No. 1:17-cv-256, 2017 WL 1534197, at *1 (E.D. Va. Apr. 24, 2017). If an asylum officer determines there is a reasonable fear, the noncitizen is placed in withholding-only proceedings, which are a type of immigration hearing that allow a noncitizen to request relief from being removed to a specific country. 8 C.F.R. §§ 208.2(c), 1208.2(c)(3)(i). Importantly, withholding-only relief does not necessarily provide an avenue for a noncitizen to remain in the United States because the relief only precludes ICE from deporting the noncitizen to the country at issue, not any country. 8 C.F.R. §§ 208.16(f), 1208.16(f); *see also Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2283 (2021).

related tattoo eight years after he allegedly left MS-13 without the gang's permission, but also held there was no objective evidence indicating Petitioner was actively involved with MS-13. *Id.* ¶ 15.

On December 20, 2021, Petitioner filed a Writ of Habeas Corpus in the United States District Court for the Eastern District of Virginia seeking either (1) immediate release, or (2) a specialized bond hearing. Dkt. 1. On February 7, 2022, the immigration judge issued a written decision denying Petitioner's deferral of removal relief under the CAT. Dkt. 9 ¶ 17; Dkt. 13-2 at 12–20. On February 9, 2022, Federal Respondents filed a Motion for Summary Judgment. Dkt. 8. On February 28, 2022, Petitioner appealed the most recent immigration decision to the BIA. *See* Dkt. 26 at 2.[3] On March 1, 2022, Petitioner filed a Cross-Motion for Summary Judgment. Dkt. 12. On March 31, 2022, this Court heard oral argument on this matter. Dkt. 21.

Petitioner is currently subject to a reinstated removal order and remains civilly detained. Dkt. 9 ¶¶ 1, 7.

## II.  DISCUSSION

### A.  STANDARD OF REVIEW

Summary judgment will be granted where, viewing the facts in the light most favorable to the non-moving party, there remains no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Marlow v. Chesterfield Cnty. Sch. Bd.*, 749 F. Supp. 2d 417, 426 (E.D. Va. 2010). When parties file cross motions for summary judgment, the court considers each motion on its own merits to determine whether either party is entitled to judgment as a matter of law. *Krpan v. Registry of Interpreters for the Deaf, Inc.*, 167 F. Supp. 3d 774, 782 (E.D. Va. 2016). A party opposing a motion for summary judgment must respond with specific facts, supported by proper documentary

---

[3] On June 16, 2022, Petitioner filed a Notice of Supplemental Authority. Dkt. 26. On June 1, 2022, Federal Respondents filed its Response to Notice of Supplemental Authority, to which Petitioner subsequently filed a Reply. Dkts. 27, 28.

4

evidence, showing that a genuine dispute of material fact exists, and that summary judgment should not be granted in favor of the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

**B.     ANALYSIS**

Section 1231(a)(6) of Title 8 of the United States Code provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision.

The Supreme Court has held that the INA's post-removal-period detention provision does not permit indefinite detention, and to interpret the statute as permitting otherwise would raise serious constitutional concerns. *Zadvydas v. Davis*, 533 U.S. 678, 689–90 (2001). In *Zadvydas v. Davis*, the Supreme Court interpreted § 1231(a)(6) to authorize post-removal-period detention for a "period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689. Under the framework set forth in *Zadvydas*, up to six months is a presumptively reasonable period of detention. *Id.* at 701. Thus, if a detainee makes a *prima facie* showing that (1) they have been held past the presumptively reasonable six-month period, and (2) there is no significant likelihood of removal in the foreseeable future, then the burden shifts to the government to provide rebuttal evidence. *See, e.g., Menghua Wan v. Crawford*, No. 1:13-cv-1473, 2014 WL 970180, at *3 (E.D. Va. Mar. 12, 2014) (citing *Zadvydas*, 533 U.S. at 701).

In this case, Petitioner claims that his detention violates 8 U.S.C. § 1231(a)(6) as interpreted by *Zadvydas* because there is "good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future." Dkt. 13 at 5–6. Accordingly, Petitioner claims that he is entitled to immediate release. *Id.* at 4, 9–10.

5

### 1. Request for Immediate Release under *Zadvydas*

It is undisputed that Petitioner's detention exceeds the presumptively reasonable six-month detainment period: he has been detained by ICE at the Caroline Detention Facility for over three years. Dkt. 9 ¶¶ 1,7. Accordingly, Petitioner clearly meets the first prong. The issue is whether Petitioner can make a *prima facie* showing that there is no significant likelihood of removal in the foreseeable future. Typically, noncitizens who have obtained relief under *Zadvydas* have shown that the government is unable to deport them. *Euceda*, 2017 WL 1534197, at *4 (providing examples of persons whom the government is "unable to remove," including a petitioner who "came from a country lacking a repatriation treaty with the United States" and a petitioner who "was not recognized as a citizen by any country"). In this case, the United States has a repatriation treaty with El Salvador and routinely deports individuals to El Salvador. Additionally, on February 7, 2022, an immigration judge issued a written decision denying Petitioner's deferral of removal relief under the CAT. Dkt. 9 ¶ 17; Dkt. 13-2 at 12–20. The fact that Petitioner is appealing that decision does not make his removal less likely.[4] *Euceda*, 2017 WL 1534197, at *5 ("[O]rdinary delays associated with processing an alien's claim for withholding or asylum do not normally trigger the concerns raised in *Zadvydas*.").[5] Thus, Petitioner has failed to make a *prima facie* showing that there is no significant likelihood of his removal in the reasonably foreseeable future.

Even if the Court assumes, *arguendo*, that Petitioner made the required *prima facie*

---

[4] Petitioner's appeals relate to withholding-only proceedings. Thus, even if Petitioner cannot be removed to El Salvador, the DHS can still remove him to another country outside of the United States once each side exhausts their appeals. *See supra* note 2.

[5] The delay in Petitioner's case is directly attributable to ordinary litigation processes, most notably, the appeals process. *Mancera v. Kreitzman*, No. 16-cv-89, 2016 WL 1249600, at *4 (E.D. Wis. Mar. 29, 2016) ("And although the withholding-only proceedings—initially, on appeal, on remand, and now again on appeal—have taken a significant amount of time, this is simply not a case in which removal is 'no longer practically attainable' as in *Zadvydas*.")

6

showing, Federal Respondents provide sufficient evidence to justify Petitioner's continued detention. Federal Respondents assert that Petitioner is a flight risk and could be a danger to the community if released. Specifically, Federal Respondents offer that Petitioner (1) failed to appear at a previous immigration hearing (in May 2006); (2) re-entered the country illegally after being removed; (3) has an outstanding warrant for aggravated murder and criminal conspiracy; and (4) has (at minimum) past ties to MS-13. *See, e.g.*, Dkt. 9 ¶¶ 3, 5–6, 15–16, 22; *see also* Dkt. 9-1 ¶ 43. Further, ICE personnel have repeatedly determined Petitioner's likelihood of removal is reasonably foreseeable, particularly given the fact that ICE frequently removes noncitizens to El Salvador and El Salvador routinely issues travel documents for its citizens' removal from the United States. Dkt. 9 ¶ 21. Accordingly, because Petitioner fails to demonstrate that "there is no significant likelihood of removal" under *Zadvydas*, Petitioner is not entitled to immediate release nor any other remedy under this theory.[6]

### 2. Due Process Claims

Petitioner argues that even if *Zadvydas* does not warrant his immediate release or an individualized bond hearing, he is nonetheless entitled to an individualized bond hearing because his continued detention violates due process. Dkt. 13 at 10–16. In particular, Petitioner argues that both the balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), as well as the factors articulated in *Portillo v. Hott*, 322 F. Supp. 3d 698 (E.D. Va. 2018), show that his detention violates due process. Federal Respondents assert that due process does not require a specialized bond hearing in the instant case, because the applicable statutes and regulations "already provide

---

[6] In the alternative, Petitioner argues that if the Court is not inclined to grant him immediate release, the Court should order that Petitioner receive a bond hearing before an immigration judge to remedy the alleged unlawful detainment under *Zadvydas*. Dkt. 13 at 10. However, the Court need not reach this issue because Petitioner has failed to establish his detention violates the principles outlined in *Zadvydas*.

7

extensive protections to all non-citizens detained pursuant to § 1231, including those in withholding-only proceedings." Dkt. 9 at 20. In addition, in their Response to Petitioner's Notice of Supplemental Authority, Federal Respondents argue that, as the Supreme Court noted in *Johnson v. Arteaga-Martinez*, "as-applied constitutional challenges remain available to address 'exceptional' cases," and Petitioner has not presented an "exceptional" case. Dkt. 27 at 2 (quoting 142 S. Ct. 1827, 1835 (2022)). Petitioner counters that the Supreme Court in *Arteaga-Martinez* did not rule on what kinds of cases remain viable for as-applied constitutional challenges, but merely recognized the government's concession that as-applied constitutional challenges are available in "exceptional cases." Dkt. 28 at 1.

This Court need not resolve the parties' dispute as to whether as-applied constitutional challenges are limited to exceptional cases, and if so, what would constitute an exceptional case because the Court finds that the *Mathews* factors weigh in the Government's favor.[7]

*Mathews* sets forth three factors that a court must consider to determine whether due

---

[7] The Court does not consider the application of *Portillo* here because it is not binding on this Court and, as Petitioner concedes, *Portillo* arose in the context of, and is generally applied to, prolonged detention under § 1226(c), not § 1231. *See* Dkt. 13 at 14.

However, even assuming *arguendo* that *Portillo* applies to the instant case, it does not entitle Petitioner to relief. *Portillo* lists the following factors for consideration: (1) the duration of detention, including the anticipated time to completion of the alien's removal proceedings; (2) whether the civil detention exceeds the criminal detention for the underlying offense; (3) dilatory tactics employed in bad faith by the parties or adjudicators; (4) procedural or substantive legal errors that significantly extend the duration of detention; and (5) the likelihood that the government will secure a final removal order. 322 F. Supp. 3d at 707.

The first factor weighs "heavily in [Petitioner's] favor as a prolonged and substantial burden on his liberty interest," because his detention far exceeds the presumptively constitutional six-month duration. *Id.* at 708. The second factor is inapplicable, because there is no underlying criminal conviction here. Considering the third factor, there is no indication that either side delayed the proceedings in bad faith. Dkt. 13 at 16. The fact that there were no procedural or substantive legal errors significantly extending Petitioner's detention (factor four), in addition to the fact that Petitioner received a reinstated final removal order (factor five) weigh in Federal Respondents' favor. Accordingly, the balancing of *Portillo* factors weigh in the Federal Respondents' favor.

8

process has been afforded: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." 424 U.S. at 335.

The first factor weighs in favor of Petitioner as he has a significant private interest in his freedom. He has been detained for over three years while awaiting his removal. Petitioner's private interest is "undoubtably 'the most significant liberty interest there is.'" *Cardona Tejada v. Crawford*, No. 1:21-cv-314, 2021 WL 2909587, at * 3 (E.D. Va., May 19, 2021) (internal citations omitted). As the Supreme Court explained in *Zadvydas*, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." 533 U.S. at 690. Federal Respondents cite the Fourth Circuit's holding in *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022), as recognizing "the limited nature of a non-citizen's liberty interest at issue in removal proceedings." Dkt. 27 at 2. However, this Court does not read *Miranda* as diminishing the importance of an individual's personal interest in their freedom under Supreme Court precedent. In *Miranda*, the Fourth Circuit found that the district court erred by relying on case law establishing due process requirements in civil commitment proceedings and proceedings to terminate parental rights in the district court's evaluation (under *Mathews*) of the private interest of noncitizens in freedom from detention. 34 F.4th at 359. The Fourth Circuit explained that "the district court failed to recognize and incorporate into its analysis Supreme Court precedent establishing that aliens are due less process when facing removal hearings than an ordinary citizen would have." *Id.* at 361. Accordingly, in the instant case, the first factor of the three-factor *Mathews* test weighs in Petitioner's favor.

With respect to the second *Mathews* factor, while the Court recognizes that the required procedural protections grow as the period of confinement grows, *see Zadvydas*, 533 U.S. at 701, there are a number of safeguards and additional procedures already in place for withholding-only proceedings. Federal regulations require "special review procedures" where a noncitizen subject to a final order of removal is detained after the presumptively reasonable six-month period. 8 C.F.R. § 241.13(a). Under those regulations, where a noncitizen provides good reason to believe there is no significant likelihood of removal in the foreseeable future, the noncitizen may seek release from post-removal-period ICE detention. *Id.* § 241.13(d)(1). Additionally, federal regulations require periodic ICE custody reviews of an alien's detention. *Id.* § 241.4. Petitioner has been detained since May 22, 2019. Dkt. 9 ¶ 7. Around that same time, ICE began conducting custody reviews.[8] *Id.* ¶¶ 20–22. These safeguards lessen the risk of erroneous deprivation. Thus, the second factor of the three-factor *Mathews* test weighs in Federal Respondents' favor.

Finally, the Court finds that the government has articulated a significant interest in this matter: "the government has a well-established interest in immigration regulation, prompt execution of removal orders, prevention of flight risk, and public safety." *See* Federal Respondents' Reply and Opposition (Dkt. 20) at 12. It is undisputed that Petitioner previously failed to appear at a 2006 immigration hearing, *see* Dkt. 9 ¶ 3; returned to the United States after a final order of removal, *see id.* ¶ 5; and has an outstanding arrest warrant for aggravated murder

---

[8] Since he was taken into custody on May 22, 2019, Petitioner has had periodic reviews by ICE personnel. Dkt. 9 ¶¶ 19–20. Each of the custody reviews resulted in a determination by ICE that Petitioner's likelihood of removal was reasonably foreseeable, and that Petitioner posed a risk of flight and a danger to the community. *Id.* ¶¶ 21–22. ICE personnel also conducted reviews in response to Petitioner's three requests for release. *Id.* ¶ 24. ICE personnel denied Petitioner's request based on evidence of Petitioner's alleged gang affiliation and criminal history in El Salvador, which as noted, *see supra* note 1, Petitioner disputes. *Id.* Federal Respondents have also indicated that, consistent with ICE regulations, ICE will review Petitioner's custody every ninety days until his release or removal. *Id.* ¶ 25.

and criminal conspiracy in El Salvador, *see id.* ¶ 6; Dkt. 9-1 ¶ 43. Thus, the balancing of the *Mathews* factors weigh in Federal Respondents' favor.

Accordingly, the Court holds that Petitioner's detention does not violate due process and Petitioner is not entitled to an individualized bond hearing.

### III.   CONCLUSION

For the reasons stated above, Federal Respondents' Motion for Summary Judgment (Dkt. 8) is **GRANTED**, and Petitioner's Motion for Summary Judgment (Dkt. 12) is **DENIED**. Further, Petitioner's Writ of Habeas Corpus (Dkt. 1) is **DISMISSED**.

It is **SO ORDERED**.

September 30, 2022
Alexandria, Virginia

/s/
**Patricia Tolliver Giles**
**United States District Judge**

/s/
Patricia Tolliver Giles
United States District Judge